JAMES SACKET, NATHAN SMITH and WILLIAM HAWLEY
*against* WILLIAM HILLHOUSE :

### IN ERROR.

THIS was a petition in chancery, brought to the Superior Court, by the defendant in error, against the plaintiffs in error, praying for an injunction against proceedings at law upon certain promissory notes, executed by *Hillhouse* to *Sacket.* These notes were executed and delivered under the following circumstances, *viz. Timothy Kirk, James Truman* and *Samuel Bolton,* having, severally, obtained patents for certain inventions to be used in heating water and other liquids, by certain articles of agreement, united their several inventions, and became joint partners therein, and constituted *Kirk,* as their agent, to vend the same for *A., B.* and *C.* being jointly interested in certain pretended new inventions, for which they had severally obtained patents, constituted *A.* their agent, to sell the right of using the same, for their joint benefit. *A.,* with the aid of *S.,* by false and fraudulent representations, induced *D., E.* and *F.* to purchase the right of using such inventions, for which they paid a certain sum in money, and executed their promissory notes to a large amount. Immediately afterwards, *S.* purchased one half of the share of *B.* in the avails of such sales, thereby becoming equally interested with *A.* and *B., B.* having previously, by the aid of *S.,* fraudulently purchased *C.*'s share in the avails of such sales. *S.,* under a concealment of the fraud practised in obtaining the notes, and with a view to purge such fraud, induced *D.* to enter into an agreement to execute to him one note for 143 dollars, 37 cents, and another note for 1000 dollars ; in consideration whereof, *D.* should be entitled to the share of *S.* in the notes executed to *A.,* by *D* , *E.* and *F.,* on the sale of the patent rights, a considerable part of which consisted of the notes of *F.,* a bankrupt. In virtue of this agreement, *D.* executed the notes above mentioned ; and the sum of 1540 dollars was endorsed on the notes originally given by *D.* and *E.* to *A.* in consideration of the sale of the patent rights, and 300 dollars were endorsed on the notes of *F.,* given to *A.* for the like consideration ; and *F.,* in consideration of the endorsement on his notes, executed a note to *D.* for the sum of 300 dollars. The note for 143 dollars, 37 cents, was paid ; and an action was brought upon the note for 1000 dollars, and judgment was rendered thereon in favour of *S.* before the *New-Haven* City Court. The action was appealed to the Superior Court, and was pending. *S.* took out execution on the judgment of the City Court, on which the sum of 550 dollars was paid. During the time of these transactions, *D.* was ignorant of the fraud practised in obtaining the original notes from *D., E.* and *F.* to *A.* On a petition in chancery, brought by *D.* against *S.,* founded upon the existence of these facts, and praying for an injunction against proceedings in the action at law, and the re-payment of the money paid on the execution and note, it was held, that the petitioner was entitled to the relief prayed for.

In a petition in chancery, praying for relief on the ground of fraud, it is not necessary that the facts be proved precisely as alleged ; it is sufficient, if they are substantially proved.

their joint benefit. *Kirk* proceeded to *New-Haven*, and by means of certain false and fraudulent affirmations and representations relating to the originality and utility of such inventions, together with the aid of *Sacket*, induced the defendant, and *Josiah B. Morse*, one *John Morris*, jun. and others, to purchase the right of using such inventions within certain limits, for which they paid him a certain sum in money, and gave their promissory notes to a large amount. Immediately after the execution of these contracts, *Sacket* proceeded to *Philadelphia*, and procured from *Bolton* an assignment of one third part of the avails of the sales above mentioned, and of all future sales of such patents within certain limits ; whereby, *Sacket* became a joint partner with *Kirk* and *Bolton ; Bolton* having, before this time, by the aid of *Sacket*, fraudulently obtained an assignment of *Truman's* share in the avails of such sales. Whereupon, *Sacket* returned to *New-Haven*, and claimed of *Kirk* one third part of the avails of the sales aforesaid ; and it was finally agreed, that *Sacket* was entitled to the sum of 856 dollars, 63 cents in money, and the sum of 1840 dollars, in the notes of the defendant, *Morse*, *Morris* and others, in the hands of *Kirk*, as his proportion of the avails of such sales. It was then agreed between *Sacket* and the defendant, that if he would execute his note to *Sacket* for 143 dollars, 37 cents, and another note for 1000 dollars, he, the defendant, should be entitled to *Sacket's* share of the notes in the hands of *Kirk*, a considerable part of which, consisted of the notes executed by *Morris*, who then was, and ever after continued to be, a bankrupt : And *Sacket* having refused to give any evidence in writing of this agreement, *Kirk*, at the request of *Sacket*, executed and delivered to the defendant, a writing of the tenor following, *viz.* " I promise to deliver and pay over to *William Hillhouse* 1840 dollars in notes which I took of him and others, when he shall demand the same. *October* 6th, 1810.                    [Signed.]        *Timothy Kirk.*"

In pursuance of this agreement, *Kirk* endorsed the sum of 1540 dollars on the notes of the defendant and *Morse*, being the notes executed to him on the sale of the patent rights ;

and endorsed the remaining sum of 300 dollars on a note given to *Kirk* by *Morris*, also for the purchase of the patent rights; and *Morris*, thereupon, in consideration of the last-mentioned endorsement, executed his note to the defendant, for the sum of 300 dollars; which note remained in the hands of the defendant, unpaid.

The transactions between the parties, in relation to the consideration and execution of the note for 143 dollars, 37 cents, and the note for 1000 dollars, before mentioned, were alleged in the petition in the following manner, *viz.* "And said *Sacket*, on obtaining the assignment of *Bolton's* share of the avails of the sales made by *Kirk* to the defendant and others, on or about the 6th of *October*, 1810, returned to *New-Haven*, and received from said *Kirk* a large sum of money as a part of his share of said *spoil;* and for that part of said sales, which remained in notes against the said *John Morris*, jun., against the petitioner and said *Morse* and others, the said *Sacket* proposed to the petitioner that he should become responsible to him, said *Sacket*, said *Morse* then being absent from said *New-Haven;* and the petitioner still relying on the representations and affirmations of said *Sacket* and *Kirk*, made as aforesaid, at the time of said sale, executed to said *Sacket* one note of 143 dollars, 37 cents, payable in four days; and one note for 1000 dollars, both dated on said 6th of *October*, 1810; and the only consideration for said notes was an agreement from said *Kirk*, to make an application or endorsement on the notes given by the petitioner and said *Morse* to said *Kirk*, as aforesaid, for the purchase of said pretended improvements and patent rights; nor was there any other; and said application was made accordingly."

The note for 143 dollars, 37 cents, was paid; and a suit was commenced, by *Sacket*, on the note for 1000 dollars, before the *New-Haven* City Court, and judgment was rendered therein, in *Sacket's* favour. The cause was appealed to the Superior Court, and was then pending. *Sacket*, however, took out execution on the judgment of the City Court, on which the sum of 550 dollars was paid; which sum was placed in the hands of *Smith* and *Hawley*, by *Sacket*, to se-

Vol. V.                           U u u

cure them against their bond given on taking out the execution. *Kirk* was a bankrupt.

It was admitted, that the notes executed by the defendant and *Morse,* and *Morris* and others, to *Kirk*, on the sale of the patent rights, were obtained by the fraudulent affirmations and practices of *Kirk* and *Sacket,* and were void; and that the fraud was concealed from the knowledge of the defendant, *Morse, Morris,* and others, until long after the execution and delivery of the notes by the defendant to *Sacket.*

Upon this state of facts, the Superior Court decreed, that *Sacket* be enjoined not to proceed any further in the suit at law; and that within a limited time, he should repay the sum of 550 dollars received upon the execution, and the money received upon the note of 143 dollars, 37 cents, together with the interest on these sums, and also the costs in the suit at law, and of the petition. To reverse this decree, this writ of error was brought.

*Daggett* and *Denison*, in behalf of the plaintiffs in error, contended, that the notes executed by the defendant to *Sacket*, were not a substitution for the original notes given to *Kirk* on the sale of the patent rights, but that they were executed in consideration of the sale of *Sacket's* share of the avails of the patents; that this was a new consideration; and that the notes were, therefore, valid.

They also contended, that there ought to be a reversal, on the ground of a material variance between the facts alleged in the petition, and those found by the court.

And they further contended, that *Hillhouse*, from the facts alleged and found, was not entitled to relief in chancery; but that he had adequate remedy at law. *Sacket* was liable for the fraud, if any had been committed: He was not a bankrupt.

*N. Smith* and *R. M. Sherman*, contra.

SWIFT, J. The question in this case, is, whether the notes given by the petitioner to the respondent *Sacket*, were obtained by fraud, and are void? It appears, that *Timothy*

*Kirk*, for himself and *James Truman* and *Samuel Bolton*, sold to *Hillhouse* and *Morse* and to *John Morris*, jun. certain patent rights, and received their notes; that this transaction was a gross fraud, which rendered their notes void; and that *Sacket* aided *Kirk* in practising the fraud, and was a party to it: After which, he purchased the right of *Bolton* to one third of the notes and money obtained by this fraud; that he then sold the same to *Hillhouse*, the petitioner, for the notes stated in the petition, who was ignorant of the fraud; that *Kirk* then endorsed on the notes given by *Hillhouse* and *Morse* 1540 dollars, and gave him a note on *Morris* for 300 dollars, which was obtained by the fraudulent sale of said patent rights, the said *Morris* being a bankrupt; and that this was all the consideration which *Hillhouse* ever received for the notes prayed to be relieved against.

It has been contended, that this is not a substitution of notes; but a sale of the share of *Sacket* in the avails of the sales of the patent rights, which constitutes a new consideration, and renders the notes valid; but I am of opinion that this transaction was, substantially, a substitution of notes; and that the original fraud is not purged. The consideration remained the same, except the note against *Morris*, which having been obtained by a like fraud, and being of no value, does not constitute a consideration to support the notes.

Indeed, the last transaction was a fraud. *Sacket*, knowing the whole claims of *Bolton* to be founded in fraud, that all the notes, being for the avails of the patent rights, were void, and that *Hillhouse* was ignorant of it, he concealed the fact, and received from him a new note. This fraud vitiates the contract, and renders the note obtained by it, a nullity.

As to any variance between the facts stated in the petition, and those found by the court, it may be observed, that they are not materially different, but are, substantially, the same; and in a petition in equity for relief on the ground of fraud, it is not necessary to prove the facts precisely as laid: It is sufficient to prove them in substance.

All the other Judges concurred in this opinion.

Judgment affirmed.